Milton D. MELLARD, Appellant,

v.

Cathleen C. MELLARD, Appellee.

No. S–11987.

Supreme Court of Alaska.

Sept. 21, 2007.

Richard W. Wright, Richard W. Wright, P.C., and Christopher E. Zimmerman, McConahy, Zimmerman & Wallace, PC, Fairbanks, for Appellant.

Mila A. Neubert, Neubert Law Office, LLC, Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Milton Mellard appeals the property division in his divorce. He argues that the trial court erred when it failed to value Cathleen Mellard's retirement account. Milton also challenges the trial court's failure to provide for Milton's future medical expenses in the property division and its award of $1,500 in attorney's fees to Cathleen. Because the trial court failed to place any value on Cathleen's retirement account, we remand the case so that the account can be valued and

1. *Cox v. Cox,* 882 P.2d 909, 913 (Alaska 1994).

2. *Laing v. Laing,* 741 P.2d 649, 651 (Alaska 1987).

the property division reevaluated. The trial court's decisions regarding future medical expenses and attorney's fees are affirmed.

## II. FACTS AND PROCEEDINGS

Milton and Cathleen Mellard were married on July 14, 1979 and separated in June of 2004. They have three children from the marriage, all of whom were adults at the time of the divorce. The parties had accumulated a substantial amount of property over their marriage and had no marital debt to allocate. Both parties had vested IBEW retirement accounts at the time of separation.

After trial on May 3–4, 2005, the court awarded each party his or her own retirement account. But while the trial court valued Milton's retirement at $346,319, placing that value in Milton's column, it failed to value Cathleen's retirement account. Instead, it assigned to Cathleen the value of her survivorship benefit in Milton's retirement, placing that value of $168,308 in her column. The resulting division of the remaining assets required Milton to pay Cathleen $5,999.44 to balance out the larger award to Milton. The amount was to come out of the investment account, life insurance policies, and other assets awarded to Milton. The trial court also ordered a number of marital items sold, with the amount divided equally between the parties. The court awarded Cathleen $1,500 in attorney's fees, bringing the total amount that Milton was to pay Cathleen to $7,499.44.

## III. STANDARD OF REVIEW

 The trial court has broad discretion in dividing property in a divorce proceeding.[1] The trial court uses a three-step procedure for a property division.[2] First, the trial court determines what property is available for division.[3] Second, the court values that property.[4] Third, the trial court determines

3. *Id.* at 651–52.

4. *Id.* at 652.

how to equitably divide the property.[5] The valuation of property available for division is a factual determination that will only be reversed if it is clearly erroneous.[6] The equitable valuation of property is reviewed under an abuse of discretion standard and will only be reversed if it is "clearly unjust."[7] The award of attorney's fees in a divorce case is within the broad discretion of the trial court and will be overturned where the attorney's fees award was manifestly unreasonable.[8] An award of attorney's fees in a divorce action is based on the relative economic situation and earning power of the spouses and is designed to assure that both spouses are able to litigate on an even playing field.[9]

## IV. DISCUSSION

Prior to trial, Cathleen retained an expert to perform a formal valuation of Milton's retirement account. Milton's present value interest in his retirement account was valued at $346,319. Cathleen's survivorship benefit in Milton's retirement was valued at $168,308. Milton did not retain an expert to value Cathleen's retirement account but instead provided a pension worksheet which reported all of the contributions that had been made to Cathleen's retirement account. The trial court awarded to the parties their respective retirement accounts but did not place a value on Cathleen's retirement account because the court did not "have a dollar value" for it. Instead, the court assigned to Cathleen the value of her survivorship benefit in Milton's retirement in order to "balance the estate."

After proposed findings of fact and conclusions of law were submitted, but before the trial court's final divorce decree, Milton objected to various provisions of Cathleen's proposal, including the treatment of the retirement accounts. Milton specifically objected to a proposed finding that "[t]he court

is unable to value Defendant Cathleen C. Mellard's IBEW retirement because no evidence was presented as to its value." Milton pointed out that he presented evidence at trial that contributions to Cathleen's retirement account totaled $124,992.52 as of March 2005 and that even after subtracting Cathleen's post-separation contributions, the value of her pension contributions alone was $116,040.52. Milton also objected to the proposed finding that valued Cathleen's survivorship benefit in Milton's retirement, arguing that he should be permitted to cancel Cathleen's survivorship benefit in his retirement. The court entered Cathleen's proposed findings without making the changes advocated by Milton.

On appeal, Milton argues that the superior court was required to value Cathleen's retirement account, renewing his argument that he supplied enough information for the court to calculate the value of the contributions made to the retirement account during the marriage, and that under this method, the value of Cathleen's retirement would be at least $116,040.52. Milton also argues that under *Root v. Root*,[10] the trial court should have ordered the parties to fill the evidentiary void regarding the value of Cathleen's retirement account. Milton also contends it was error for the court to award Cathleen survivor status under Milton's retirement plan without valuing the award of survivorship.[11] Cathleen counters that the superior court did not order that Cathleen be granted survivorship benefits in Milton's retirement, but rather, Milton made an irrevocable survivorship election at the time he retired. Cathleen maintains that the trial court valued the survivorship benefit in lieu of Cathleen's retirement and used it to equalize the property division. Cathleen contends that if Milton's suggestion of $116,040.52 as the value of Cathleen's retirement is accepted, then Mil-

---

5. *Id.*

6. *Cox,* 882 P.2d at 913–14.

7. *Id.* at 914 (internal quotations and citation omitted).

8. *Kowalski v. Kowalski,* 806 P.2d 1368, 1372 (Alaska 1991).

9. *Id.*

10. 851 P.2d 67 (Alaska 1993).

11. Milton argues that it was error to award Cathleen survivor benefits in his retirement without valuing that interest. However, the trial court did assign a value to that benefit in the property division.

ton was not prejudiced because Milton's valuation of her retirement is less than the valuation of the survivor benefit. Cathleen also maintains that under *Tanghe v. Tanghe*,[12] a case decided after the Mellards' trial, it was improper for the court to value a spouse's survivorship benefit, and therefore Milton has actually benefited from the trial court's valuation of Cathleen's survivorship benefit instead of the retirement account.

## A. Cathleen's Retirement

The trial judge divided the property evenly between the parties. This resulted in Milton having to pay Cathleen $5,999.44 in order to equalize the property division. However, while the trial court awarded Milton his retirement with a value of $346,319, it awarded Cathleen her retirement without placing a value on it.

■ In *Root v. Root*, the court divided marital property that included both a non-vested pension and a vested PERS pension.[13] The court divided the marital estate without valuing either of the assets because neither party presented any evidence at trial as to the value of the benefits.[14] Although we recognized "that it is the duty of the parties, not the court, to ensure that all necessary evidence is before the court in divorce proceedings and that a party who fails to present sufficient evidence may not later challenge the adequacy of evidence on appeal," we noted that "where a party identifies a significant marital asset but presents no evidence as to its value, the best practice is for the trial court to direct the parties, or the delinquent party, or the party having the best access to the proof, to fill the evidentiary void."[15] In this case, the pension worksheet submitted for Cathleen's retirement account did not include evidence of present value as was performed for Milton's retirement account. Thus, if the trial court did not wish to resolve the matter by issuing a

QDRO that would divide the marital portion of both pensions, and wished to award the parties their own pensions, it should have directed one of the parties to fill this "evidentiary void" and to provide a present-day value of Cathleen's retirement. It was error to fail to value Cathleen's account and to assign a zero value to Cathleen's retirement account.

## B. Survivorship Benefits

The trial court valued Cathleen's survivor benefits in Milton's retirement at $168,308 and placed that value on Cathleen's side of the property division worksheet. Cathleen maintains that Milton's election of survivorship benefits was irrevocable. Although the trial court did not directly address the question whether the election of survivorship benefits was irrevocable, it did note its understanding that Cathleen will receive half of Milton's retirement if Milton dies before Cathleen. Milton does not appear to have contested that fact at trial, and he points to no support on appeal for his contention that he can revoke his survivorship election.

The trial court valued the survivorship benefit in order to "balance the estate." The question Cathleen presents is whether it was error to assign any value to that survivorship benefit. In *Tanghe v. Tanghe*,[16] the husband had elected survivor benefits for his wife, and the pensions were separated using QDROs.[17] The husband argued that because the wife was expected to live longer than he, she would receive not only her remaining interest in the husband's retirement, but also an increase in her retirement, representing the portion that was being paid to the husband.[18] The husband argued that the court should have assigned values for both the wife's survivorship interest in the husband's pension and her reversionary interest in her own pension after the husband's death.[19] The question before us was thus whether the

---

12. 115 P.3d 567 (Alaska 2005).

13. 851 P.2d at 68.

14. *Id.* at 69.

15. *Id.*

16. 115 P.3d 567 (Alaska 2005).

17. *Id.* at 569.

18. *Id.*

19. *Id.*

wife's survivorship interest in her husband's retirement should have been capitalized and credited to the wife, in addition to being included in the QDRO.[20] We held that the capitalization of the survivorship benefits would place all of the risk of outliving the husband on the wife.[21] While the differences in parties' ages and life expectancies made the risk that the husband would not benefit from his wife's retirement greater, this was the same risk the husband took during the marriage.[22] Therefore, we determined that the use of the QDROs to divide the retirement of the parties and their survivorship benefits was proper and that it was not error for the trial court to refuse to capitalize the survivor benefits the wife might receive under the QDRO.[23]

In this case, however, there were no QDROs dividing the retirement accounts of the parties; instead, the parties were awarded their own retirement accounts. As the *Tanghe* court noted, QDROs do not require that the parties' retirement funds be valued.[24] Although Milton has no interest at all in Cathleen's retirement, unlike the situation in *Tanghe*, where both parties had an interest in the other party's retirement accounts,[25] Milton will receive less money for his retirement because of his election giving Cathleen survivor benefits in his retirement plan. On the other hand, awarding and valuing Cathleen's survivorship benefit and placing it in her column does place on Cathleen the entire risk that she will outlive Milton. Although Milton is twenty-one years older than Cathleen, she only receives the survivor benefit from his retirement if she does in fact outlive him.

Because we conclude above that it was error not to value Cathleen's retirement account, this case must be remanded to the superior court, which will have to revisit the property division in order to rebalance the marital estate in light of this asset. In doing so, the court must devise an equitable way to treat the survivorship benefit because Mil-

ton's interest in his retirement has been reduced by the survivorship election. The trial court will have several options, which could include valuing Cathleen's survivorship in Milton's retirement interest and placing it on her side of the property division, or, as in *Tanghe*, ordering that Milton receive survivorship benefits in Cathleen's retirement and dividing both parties' retirement accounts using QDROs.

## C. Attorney's Fees

■ Milton argues that the trial court erred when it awarded Cathleen $1,500 in attorney's fees. Cathleen maintains that the award was appropriate based on the conduct of the parties throughout the litigation. Cathleen notes that she provided thirty-two exhibits for trial, prepared the property distribution spreadsheet, and obtained real and personal property valuations and a retirement valuation, all at her own cost. Milton, on the other hand, did not provide any input into the property spreadsheet and refused to make even the initial disclosures. Cathleen argues that the trial would have been much shorter had Milton participated more actively in the process, which the court noted in its findings. Cathleen therefore argues that the attorney's fees award was appropriate under the circumstances.

When the trial court made its findings on the record at the end of the trial, the court stated:

> But I find that this trial has taken one day longer than it should [have] because there was no participation [by Milton].... We basically did a settlement conference with me here and me deciding because either there wasn't enough proof or there was ... just approximate proof on both sides....
>
> And so I'm going to assess—you can treat it as a sanction or you can treat it as attorneys fees, but it's $1,500 for the cost

20. *Id.*

21. *Id.* at 570.

22. *Id.*

23. *Id.*

24. *Id.*

25. *Id.* at 569.

of not participating earlier and causing this thing to last an extra day.

In the divorce decree, Cathleen was awarded $1,500 in costs and attorney's fees based on a finding that "[t]he trial took one day longer than necessary, because of [Milton's] lack of participation prior to trial."

 In making an increased attorney's fees award in a divorce proceeding, the trial court must engage in a two-step process.[26] "[T]he court must first determine what fee award would be appropriate under the general rule, and only then increase the award to account for a party's misconduct. Failure to follow this two-step process constitutes an abuse of discretion."[27] The trial court must also make explicit findings of bad faith or vexatious conduct to justify the increased fee award.[28] In this case, the trial court did not first make a determination whether any attorney's fees award would be appropriate in this case. But the trial court did make references to the size of the marital assets, and characterized this case as a fifty-fifty division in which no spousal support or maintenance was required because both parties have their own income. Although not as explicit as they could be, the court's statements indicate that attorney's fees would not have been awarded under normal circumstances because the parties were economic equals.

 This brings us to the second step of the analysis: whether the award should have been increased to account for a party's misconduct. The course of conduct in this case that justified the trial court's enhanced fee award included Milton's passivity during the pretrial proceedings, his failure to make even initial disclosures without being compelled to do so, and his failure to present evidence or contribute in any way to the property spreadsheet. This caused the trial to last longer than necessary. Bad faith conduct that prevents the parties from litigating on an equal plane may lead to an award of enhanced fees.[29] By engaging in bad faith conduct, one party can increase the other party's attorney's fees and can prevent that party from litigating on an even playing field. Again, while the trial court could have been more explicit in its findings to support the fee award in this case, it did refer to conduct that touched on the underlying purpose of allowing an increased fee award in a case of vexatious or bad faith litigation tactics. Thus, the award of attorney's fees was not an abuse of discretion. But we caution that a finding of vexatiousness or bad faith to support an enhanced fee award should be more clear in order to allow review on appeal.

## D. Milton's Future Medical Expenses

Milton argues that it was an abuse of discretion for the trial court to fail to make some provision for Milton's future medical needs. Cathleen responds that Milton provided no information to the trial court about his health and notes that if Milton's future medical needs had been important, he could have presented evidence to the trial court to substantiate his claims.

On February 15, 2005, Cathleen sent Milton a letter asking for a signed medical release because Milton might have had some medical issues and Cathleen wanted more information before trial. Milton responded that he "[was] at a loss to understand why or how the parties' medical condition[s] are an issue." At the conclusion of the trial, the court made one reference to medical issues:

> In terms of health, Mr. Mellard, you know, may have to have some surgery in the future. Nobody talked to me about what type of medical benefits he has. I assume he's on Medicare at this point in time. I don't know. I assume that. Should the parties have set aside some money for that future surgery when they got the word? Oh, absolutely. Did they? No. They went on vacations, they bought toys, they paid off the house. Was it a boon to the marriage? Absolutely.

 Milton did not request an award for future medical needs at trial, and he never argued for an unequal distribution of

---

26. *Kowalski,* 806 P.2d at 1373.

27. *Id.*

28. *Id.*

29. *Id.*

property based on his medical condition. We generally will not consider a claim raised for the first time on appeal, absent plain error.[30] In this case, Milton presented no evidence or exhibits to the trial court regarding his future medical needs. As Milton failed to present any evidence or argument regarding the future medical expenses at the trial court level, his argument is waived on appeal.

## V. CONCLUSION

The trial court erred in not valuing Cathleen's retirement account. The decision of the trial court regarding Cathleen's retirement account is REVERSED, and the case is REMANDED to the trial court to reevaluate the property division. The trial court's decisions to award attorney's fees and not to award future medical expenses are AFFIRMED.

---

**30.** *Alderman v. Iditarod Props., Inc.,* 104 P.3d 136, 145–46 (Alaska 2004).