*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MELVIN B. GROVE JR., | ) | |
| | ) | Supreme Court Nos. S-16056/16075 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-13-05282 CI |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| CHERYL M. GROVE, | ) | No. 7189 – August 11, 2017 |
| | ) | |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellant/Cross-Appellee. Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellee/Cross-Appellant.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.

## I.    INTRODUCTION

Parties in a divorce and property division trial disputed the value of the husband's post-retirement military medical benefits. The superior court determined that the benefits were a marital asset, but declined to value them or account for their value when dividing the marital estate. The court instead ordered the husband to pay for

comparable medical benefits for the wife for the rest of her life. The court also determined that most of the wife's student loans were marital debt and allocated that debt to her. Both parties appeal the superior court's decision regarding the husband's medical benefits; the husband also appeals the superior court's characterization of the student loans as marital debt. We affirm the superior court's characterization of the wife's student loans as marital debt, but we reverse and remand for the superior court to assign a value to the husband's post-retirement military medical benefits and to finalize an equitable distribution of the marital estate.

## II.    FACTS AND PROCEEDINGS

Cheryl and Melvin Grove married in 1986 and separated in 2011; Cheryl filed for divorce in 2013. They had no minor children at the time of separation. Melvin entered the military six months before the marriage and retired in 2005. He has a military pension and lifetime military medical benefits through TRICARE. From 2009 to 2012 Cheryl pursued a master's degree, incurring substantial student loan debt.

Trial was held over three days in 2014; the primary asset in dispute for the marital property division was Melvin's post-retirement medical benefits. Both Cheryl and Melvin presented expert testimony valuing his benefits. Cheryl's expert provided three values ranging from $239,000 to $284,000; Melvin's expert provided a value of $124,400. The parties also provided testimony about Cheryl's student loan debt. In a March 2015 order the superior court granted the divorce and distributed the marital estate.

The superior court characterized all of Melvin's medical benefits as marital but declined to assign a cash value, seeking instead to give Cheryl "half of what Melvin has . . . but not something different." The court ordered "Melvin to pay Cheryl an amount of money over time that will enable her to purchase a reasonably equivalent" medical insurance policy, "leav[ing] the selection of that policy to the parties to work out

if they can." Melvin was directed "to deposit the monthly premium into an account controlled by Cheryl." The court ordered that Cheryl use the money only to pay for medical insurance premiums "unless the parties, with the approval of the Court, agree to an alternate use."

The superior court characterized most of Cheryl's student loans as marital. The court credited Cheryl's testimony that about $50,000 of her nearly $60,000 debt was incurred before separation and that some loan proceeds were used to pay living expenses. The court allocated that marital debt to Cheryl in the property division.

Cheryl moved for reconsideration, arguing that the superior court had erred by failing to assign a value to Melvin's medical benefits and to take that value into account in the property division. Cheryl alternatively requested clarification of the court's order, raising concerns about fluctuation of premiums and the timing and duration of Melvin's payments. In response Melvin disputed the court's factual finding that the medical benefits were 100% marital, noting that he had entered the military prior to marrying. And although Melvin stated that the court's method of distribution for the medical benefits was "reasonable," he sought to ensure that Cheryl did not receive more comprehensive medical insurance than his TRICARE coverage. Melvin also disputed the court's finding that Cheryl's student loans were marital debt, asserting that no portion of the loans was used for living expenses.

On reconsideration the superior court refused to change its distribution of the medical benefits or its characterization of nearly $50,000 in student loans as marital debt. The court "declined to put a fair market value on the [medical] benefits because of the awkward impact of valuation of this somewhat contingent asset" and because "it cannot be easily translated to a liquid value." The court instead described its order as an alternative and more appropriate valuation of Melvin's medical benefits. The court clarified, however, that "Melvin must provide the coverage for Cheryl until she dies,

even if he predeceases her," and that Melvin's payments must track any fluctuations in Cheryl's insurance premiums. The court rejected Melvin's assertion that Cheryl's student loans were separate debt, noting that he was merely repeating or supplementing what he said at trial.

Melvin appeals the superior court's characterization of Cheryl's student loans as marital debt, and both parties appeal the court's method of valuation and allocation of Melvin's medical benefits.

## III.   STANDARD OF REVIEW

Equitable property distribution on divorce is a three-step process. "[C]haracterizing property as either marital or separate,"[1] the first step, "may involve both legal and factual questions."[2] "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions."[3] "Findings of fact are reviewed for clear error, but whether the trial court applied the correct legal rule . . . is a question of law that we review de novo using our independent judgment."[4] "Second, the trial court must place a value on the property, a ruling which is a factual determination reviewed for clear error. To reverse for clear error, we must be left with a definite and firm conviction on the entire record that a mistake has been made."[5] A

---

[1]      *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013).

[2]      *Id.* at 459 (quoting *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006)).

[3]      *Id.* (citing *Odom*, 141 P.3d at 330; *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991)).

[4]      *Id.* (quoting *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005)).

[5]      *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005) (footnote omitted) (first citing *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988); then citing *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979)).

court's decision whether to value personal property, however, is a legal question that we review de novo.[6] We review the third step, the equitable allocation of property, for an abuse of discretion, reversing only if it is "clearly unjust."[7]

## IV.    DISCUSSION

### A.    Characterizing $50,000 Of Cheryl's Student Loans As Marital Was Not Erroneous.

Melvin disputes the superior court's determination that all but $10,000 of Cheryl's student loans was marital debt, arguing that the loans all should be characterized as separate property. We have held that "there is a presumption that debts incurred during the marriage are to be treated as marital."[8] That presumption applies to student loan debt; in *Veselsky v. Veselsky* we determined that absent "evidence showing that the parties intended the debt to be separate," a student loan "obtained during the marriage" was properly characterized as marital property.[9] In *McDougall v. Lumpkin* we similarly held that student loans should be treated as marital debt, especially in light of unrebutted evidence that the spouse pursuing higher education did so with the other

---

   [6]    *See Mellard v. Mellard*, 168 P.3d 483, 486 (Alaska 2007) (holding that "it was error to fail to value" a marital asset); *Cox v. Cox*, 882 P.2d 909, 918 (Alaska 1994) ("The court's failure to make any findings regarding the value of personal property constitutes reversible error . . . .").

   [7]    *Hansen*, 119 P.3d at 1009 (citing *Moffitt*, 749 P.2d at 346).

   [8]    *Veselsky v. Veselsky*, 113 P.3d 629, 636 (Alaska 2005).

   [9]    *Id.*; *see also Wagner v. Wagner*, 386 P.3d 1249, 1252-53 (Alaska 2017) (holding post-marriage consolidated student loan, including one pre-marriage loan, was all marital debt absent evidence of intent to keep loans separate).

spouse's support, and that "they had sometimes used the student loans to pay living expenses and non-education debts."[10]

The superior court made the following factual findings when characterizing the loans: (1) "[t]he debt at the time of the first day of trial (January 2014) was [about $60,000]"; (2) "roughly $10,000 of that total was incurred after separation"; (3) "[a] portion of the loans was paid directly to the college for tuition and housing"; and (4) "[a] portion went directly to [Cheryl] for living expenses." Based on those findings the court determined that nearly $50,000 of Cheryl's student loans was marital debt.

Melvin asserts that "the loans were used *exclusively* for tuition and no part of the student loan funds were used for living expenses" and "the parties agreed that the loans would be separate and that [Cheryl] would be responsible for repaying them." But Melvin has not shown that the court's factual findings are clearly erroneous or that he rebutted the presumption that the loans were marital debt. "[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[11] Cheryl testified that her loans paid for tuition, housing, and living expenses, that about $10,000 of the debt was incurred after separation, and that Melvin had been supportive of her educational endeavors. The court credited Cheryl's testimony, "and we will not re-weigh evidence when the record provides clear support for the trial court's ruling."[12] The court's underlying and ultimate factual findings characterizing $50,000 of the student loans as marital are not clearly erroneous.

---

[10]     11 P.3d 990, 994 (Alaska 2000) (holding superior court should have treated student loans as marital debt).

[11]     *Fink v. Municipality of Anchorage*, 379 P.3d 183, 192 (Alaska 2016) (quoting *In re Adoption of S.K.L.H.*, 204 P.3d 320, 325 (Alaska 2009)).

[12]     *Id.* (quoting *In re Adoption of S.K.L.H.*, 204 P.3d at 325).

Based on the law and the facts we affirm the superior court's characterization of about $50,000 of Cheryl's student loan debt as marital.

**B.  Not Valuing Melvin's Post-Retirement Medical Benefits And Not Accounting For That Value In Distributing The Marital Estate Was Error.**

Both Melvin and Cheryl appeal the superior court's treatment of Melvin's post-retirement medical benefits.  Cheryl argues that the court erred by failing to assign a value to the benefits, and she requests that the court be directed to value them and consequently "rebalance the distribution of the marital estate."  Melvin argues that the benefits should not be considered marital, and that his TRICARE benefits cannot be given an accurate cash value based on the trial testimony and our decision in *Hansen v. Hansen*.[13]  But Melvin also posits that "a fair cash payment" — rather than a lifetime stream of payments for medical insurance premiums — would be the more appropriate method of equalizing the marital estate distribution.

Melvin's argument that his post-retirement medical benefits are not marital property is unpersuasive:  "Health insurance benefits earned during the marriage are a marital asset of the insured spouse."[14]  In *Burts v. Burts* we specifically analyzed TRICARE benefits earned during the marriage and concluded that they properly were

---

[13]     119 P.3d 1005, 1016 (Alaska 2005) (holding that to calculate the post-retirement medical benefits' value, "the superior court should look to the amount of the premium subsidy provided by the employer, rather than to either the proceeds or the cost of procuring comparable insurance").

[14]     *Id.* at 1015 (citing *Kinnard v. Kinnard*, 43 P.3d 150, 156 (Alaska 2002)); *see also Dundas v. Dundas*, 362 P.3d 468, 474-75 (Alaska 2015) (remanding for court to address "apparent oversight" in failing to make findings about "potential PERS retirement health benefit").

considered marital.[15]  But characterizing all of Melvin's TRICARE benefits as marital was clearly erroneous.  The court found that "[a]ll of Melvin's retirement medical benefits are marital" because Melvin "entered the military after marrying and left before separation."  But, as Cheryl acknowledges, Melvin entered the military six months before the marriage.  On remand the court should recalculate the portion of Melvin's TRICARE benefits earned during the marriage.[16]  Apart from that error the court correctly characterized Melvin's post-retirement medical benefits as marital.

Characterizing the benefits was the first step in the equitable division process.[17]  Cheryl argues that the superior court failed to complete the second step when it did not value Melvin's post-retirement medical benefits for purposes of an equitable division and distribution of the marital estate.  We agree.

The superior court ordered Melvin to pay Cheryl's lifetime health insurance premiums as an alternative valuation of Melvin's post-retirement medical benefits.  But the court also expressly "declined to put a fair market value on the benefits."  The court's order that Melvin "pay Cheryl an amount of money over time that will enable her to purchase a reasonably equivalent policy" does not qualify as a valuation under the

---

[15]    266 P.3d 337, 341-46 (Alaska 2011); *see also Horning v. Horning*, 389 P.3d 61, 64 (Alaska 2017) (reaffirming *Burts* and holding spouse's TRICARE benefit was marital property to the extent earned during the marriage).

[16]    *See Hansen*, 119 P.3d at 1015 ("The court should determine the percentage of the benefits that is marital by calculating the 'coverture fraction.' This fraction is calculated by dividing the number of years worked during the period of coverture by the total number of years worked." (footnote omitted) (quoting BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.10 (2d ed. 1994))).

[17]    *See Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013) (first citing *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991); then citing *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983)).

second step and cannot substitute for an appropriate equitable distribution of the marital estate.

Without findings about the value of marital property, we have no "means of evaluating whether an equitable distribution has been achieved"; not making such findings "constitutes reversible error."[18] In *Mellard v. Mellard*, for example, we held that it was error to distribute a retirement account before assigning it a value.[19] In that case the wife did not provide evidence of her retirement account's present value; the court distributed the estate and ordered an equalization payment after assigning a value only to the husband's retirement account.[20] We reversed, holding "it was error to fail to value [the wife's] account and to assign [it] a zero value."[21] Here the superior court did not assign a value to Melvin's post-retirement benefits despite testimony by two experts, yet the court then ordered an equalization payment without accounting for the value of those benefits. Under *Mellard* failure to value the benefits before finalizing an equitable division of the marital estate was erroneous.[22]

The nature of Melvin's post-retirement medical benefits does not relieve the superior court of responsibility for determining their value. *Hansen* is the controlling case on valuing post-retirement medical benefits,[23] and neither party asked us to overrule that case. In *Hansen* we held that "the superior court should look to the amount of the

---

[18]     *Cox v. Cox*, 882 P.2d 909, 918 (Alaska 1994) (citing *Lang v. Lang*, 741 P.2d 1193, 1195 (Alaska 1987)).

[19]     168 P.3d 483, 486 (Alaska 2007).

[20]     *Id.* at 484.

[21]     *Id.* at 486.

[22]     *Id.*

[23]     *See* 119 P.3d 1005, 1016 (Alaska 2005).

premium subsidy provided by the employer, rather than to either the proceeds or the cost of procuring comparable insurance."[24] We acknowledged the "inherent difficulties in attempting to calculate the value of" these benefits;[25] we also explained that even a non-transferrable marital asset has value, and "the court should have determined this value."[26] The superior court expressed some concern about the fairness of assigning a cash value to Melvin's non-transferrable benefits, noting that — unlike other marital assets — health insurance cannot be sold and "symmetry is absent if Cheryl gets cash and Melvin gets medical coverage." But under *Hansen* the court must determine the value of non-transferrable benefits regardless of their nature.[27]

We also explained in *Hansen* how to value post-retirement medical benefits,[28] and it was possible for the superior court to do so here. Melvin argues that TRICARE cannot be valued consistent with *Hansen*'s requirement because the benefits "have no employer subsidy to the recipient employee" and are "provided free by the government." He further argues that both his own expert witness and Cheryl's violated *Hansen* by valuing his benefits based on "the cost of procuring comparable insurance."[29] Melvin argues that *Burts*, in which we determined that TRICARE benefits were marital and could be valued, does not apply here because "the potential violation of *Hansen* does not appear to have been an issue" in that case.

---

[24]     *Id.* at 1016 (citing BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.26 (2d ed. Supp. 2004)).

[25]     *Id.*

[26]     *Id.* at 1015.

[27]     *See id.* at 1015-16.

[28]     *See id.* at 1016.

[29]     *Id.* (citing TURNER, *supra* note 24, § 6.26).

Melvin's arguments are not persuasive. We held in *Burts* that "TRICARE benefit[s] can be objectively valued" and cited sources explaining how to do so.[30] The experts at trial did not impermissibly rely on the cost of replacement insurance to value Melvin's TRICARE benefits. Both experts testified that applying *Hansen* to TRICARE is difficult because the government is self-insured and there is no published value for the premium subsidy. But both experts estimated Melvin's TRICARE benefits' premium subsidy value by reference to analogous plans, a method that does not violate *Hansen*'s mandate. We see no reason the superior court cannot on remand rely on the expert testimony to make a valuation consistent with *Hansen*.

We do agree with Melvin's alternative position that the superior court's chosen method "bears the strong potential for disputes." We have a "strong policy" favoring reducing financial entanglement after divorce,[31] and requiring Melvin to pay Cheryl's monthly insurance premiums for her lifetime only increases the likelihood of future financial disputes.[32] The court left "selection of that policy to the parties to work out if they can" and, as Melvin observed, if and when they cannot the court would once again become involved in the property division. Under the court's order such conflict could continue even after Melvin's death. Valuing Melvin's post-retirement medical benefits and equitably dividing and distributing the marital estate avoids those pitfalls.

---

[30] 266 P.3d 337, 343 (Alaska 2011) (first citing TRACY FOOTE, MILITARY DIVORCE TIPS 17 (2010); then citing MARK E. SULLIVAN, THE MILITARY DIVORCE HANDBOOK 522 (Am. Bar Ass'n 2006)).

[31] *Ethelbah v. Walker*, 225 P.3d 1082, 1095 (Alaska 2009) (quoting *Musgrove v. Musgrove*, 821 P.2d 1366, 1370 n.7 (Alaska 1991)).

[32] *See* 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.31, at 193 (3d ed. 2005) ("Divorced parties are notoriously willing to pursue litigation against each other, and future court actions are therefore a significant possibility as long as any issues remain outstanding.").

We note finally that valuation of Melvin's medical benefits will affect the marital estate's overall value. Once valuation is complete the superior court "may revisit the larger question of how best to equitably divide the estate,"[33] while considering "the financial condition of the parties, including the availability and cost of health insurance."[34] The court retains discretion to divide and distribute the estate equitably, including ordering an equalization payment on reasonable terms.[35]

## V.    CONCLUSION

We AFFIRM the superior court's characterization of a portion of Cheryl's student loans as marital. We REVERSE the superior court's decision about Melvin's post-retirement medical benefits and REMAND for the superior court to value those benefits and equitably divide and distribute the marital estate.

---

[33]    *Hanson v. Hanson*, 125 P.3d 299, 306 n.22 (Alaska 2005) (citing *Harrower v. Harrower*, 71 P.3d 854, 860 n.17 (Alaska 2003)).

[34]    AS 25.24.160(a)(4)(D).

[35]    *See Pfeil v. Lock*, 311 P.3d 649, 655 (Alaska 2013) (noting that on remand "if the court engages in an equitable distribution of all of the parties' marital . . . property, it may reallocate the property or order an equalization payment to achieve an equitable distribution").