*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| GREGORY GORDON, | ) |
| | ) Supreme Court No. S-16639 |
| Appellant, | ) |
| | ) Superior Court No. 3KN-13-00583 CI |
| v. | ) |
| | ) O P I N I O N |
| PATRICIA GORDON, | ) |
| | ) No. 7273 – August 10, 2018 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Anna Moran, Judge.

Appearances: Noah H. Mery, Gilman & Pevehouse, Kenai, for Appellant. William Walton, Walton, Theiler & Winegarden, LLC, Kenai, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

I.      INTRODUCTION

The superior court issued a decree divorcing Gregory Gordon and Patricia Gordon and dividing the marital estate. One of the largest components of the marital estate was a retirement medical benefit earned by Patricia during the marriage through her employment with the State of Alaska. The superior court found that the benefit was

entirely marital, but the court concluded that including the full value of the benefit in the marital estate (which the court determined should be divided 50/50) would result in a "windfall" to Gregory. The court therefore applied "the coverture fraction as if [Patricia] had remained working for the State" — even though Patricia had in fact quit her job with the State during the marriage.

We agree with Gregory's argument that the court erred in applying this adjusted coverture fraction. The coverture fraction is used to determine what part of a retirement benefit is marital property and what part is separate property. It should not be used to discount the value of marital property or as a guideline for equitably dividing marital property. The superior court should have characterized the retirement medical benefit as marital or separate in accordance with the actual coverture fraction, valued the benefit at its full value, and divided the marital estate — including the retirement medical benefit — between the parties according to the statutory equitable factors. We therefore reverse the court's equitable distribution of the marital estate and remand for further consideration.

## II.    FACTS AND PROCEEDINGS

Gregory and Patricia married in 2000 and separated in 2013 following a domestic violence incident. For much of the marriage — from 2001 until shortly before the parties' separation — Patricia worked for the State of Alaska.[1] During that time, Patricia was enrolled in the Public Employees' Retirement System (PERS) and earned a pension and a retirement medical benefit. Patricia earned these benefits entirely during the marriage, and the benefits vested during the marriage.

---

[1]    Actually, Patricia worked for both the City of Kenai and the State. For ease of reference, in this opinion we refer to her employment as only being with the State.

Patricia filed for divorce soon after the parties' separation, and the superior court held a trial over several days in May, June, and August 2016. A major point of contention at trial was Patricia's PERS medical benefit.

Financial planner Sheila Miller gave expert testimony on the value of the PERS pension and medical benefits. She estimated the present value of the pension at $154,727 and the present value of the retirement medical benefit at $195,610. Reports outlining Miller's assumptions and methodology were admitted into evidence.

Miller also testified about the mechanics of equitably distributing the value of the PERS benefits. Patricia was 42 years old at the time the trial ended and would not be eligible to receive the pension and medical benefit until she turned 60, the applicable retirement age. Moreover, the medical benefit was personal to her, and she could not share it with Gregory or sell it. Miller suggested that the superior court could divide the PERS pension and medical benefits using a qualified domestic relations order (QDRO).[2] Assuming "a 50/50 division," Miller testified that the QDRO would assign Gregory a share of Patricia's monthly pension payment equal to 50% of the monthly pension payment plus 50% of the value of Patricia's monthly medical benefit. Because the medical benefit and pension were of comparable value, Miller's proposed QDRO would as a practical matter assign "basically . . . all of the" pension to Gregory, leaving Patricia with the medical benefit.[3]

---

[2]     *See Laing v. Laing*, 741 P.2d 649, 658 (Alaska 1987) ("[A] 'qualified domestic relations order' (QDRO) can be filed with the administrator of the employee spouse's pension plan. If and when the employee spouse's pension vests and matures, the plan administrator makes appropriate payments directly to the non-employee former spouse in accordance with the QDRO." (citation omitted)).

[3]     For example, in one post-retirement year, the health benefit is worth approximately $1,800 per month and the pension worth approximately $1,130 per

(continued...)

Patricia addressed the PERS benefits in her testimony, as well. She stated that she would prefer to withdraw her PERS contributions — worth approximately $64,000 — immediately and have these contributions divided between the parties, even though doing so would result in forfeiture of her retirement health benefit and the employer contributions to her pension. She explained that she did not want the medical benefit if she would have to assign practically all of her pension to Gregory.

Following trial, the superior court issued a divorce decree with accompanying findings of fact and conclusions of law. Among other things, the decree distributed the marital estate. The court began its equitable distribution analysis by discussing some of the factors listed in AS 25.24.160(a)(4), including the parties' respective ages, health issues, work histories, educational backgrounds, earning capacities, and finances.[4] Based on these factors, the court determined that a "50/50

---

[3] (...continued)
month, and thus under a 50/50 division, Gregory would be entitled to $900 + $565 = $1,465 per month. The proposed QDRO would assign Gregory the entire $1,130 pension, and Patricia would pay Gregory $335 out of pocket to cover the balance. In another year, Patricia's medical benefit is worth about $1,000 per month and her pension around $1,160 per month, and thus the QDRO would assign Gregory $500 + $580 = $1,080 of the monthly pension payment. Patricia would not have to pay Gregory anything out of pocket, but he would receive almost all of the pension payment.

[4] The AS 25.24.160(a)(4) factors are:

(A)   the length of the marriage and station in life of the parties during the marriage;

(B)   the age and health of the parties;

(C)   the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(continued...)

property division [was] appropriate."

The superior court then proceeded to discuss the parties' principal assets. It identified "the valuation and division of [Patricia's] medical retirement benefit" as the "most difficult and contentious issue" in the case. The court determined that Patricia's PERS medical benefit was marital property as it was "earned during the marriage," and the court calculated that a 50/50 division of the marital estate would result in Patricia "ow[ing] [Gregory] $97,805 [i.e., half of $195,610] for his portion of the medical retirement benefit." The court stated that such a division would be inequitable and would constitute "a windfall" to Gregory. The court noted Miller's suggestion that Patricia "reimburse [Gregory] for his portion of the medical retirement benefits" by "giv[ing] him her full PERS [pension]." But the court found this option problematic as it "would leave [Patricia] with no retirement except for medical benefits."

---

**4** (...continued)

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division.

The court discussed *Hansen v. Hansen*[5] and *Engstrom v. Engstrom*,[6] cases addressing application of a coverture fraction to retirement medical benefits.[7]  After summarizing the cases, the superior court concluded that "[t]he coverture fraction discussed in *Hansen* and *Engstrom* does not technically apply because [Patricia] no longer works for the State of Alaska."  The court also concluded that "[t]o date, the Alaska Supreme Court has not addressed th[e] precise issue" of how to prevent "marital retirement benefits that vest during a marriage from becoming a windfall to the other spouse if the court cannot use the coverture fractions suggested in *Hansen* and *Engstrom*."

The superior court reasoned, however, that it had power as a "court of equity" to craft a solution in light of "the financial condition of the parties, the conduct of the parties, including any conduct causing the unreasonable depletion of assets, [and] the circumstances and necessities of the parties" — factors set forth in AS 25.24.160(a)(4).  The court proceeded to consider these factors and ultimately determined that an "equitable approach would be to award [Gregory] $34,407 for his portion of [Patricia's] medical retirement [benefit]."  The court explained:

> The court reached this figure by using, as a guideline, the coverture fraction as if [Patricia] had remained working for the State of Alaska.  If [Patricia] had continued to work for

---

5    119 P.3d 1005 (Alaska 2005).

6    350 P.3d 766 (Alaska 2015).

7    The coverture fraction is "the portion of [a retirement benefit] which the law deems to have been acquired during the marriage." 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:25, at 149 (3d ed. 2005).  It is calculated by dividing the number of years that a spouse worked during the marriage for the employer who is providing the benefit by the total number of years that the spouse worked for the employer. *Engstrom*, 350 P.3d at 770-71.

the State of Alaska until age 60 she would have had 33 years of service. The marital or coverture portion would be 11.6 years [based on Patricia's employment between 2001 and 2013]. Using the coverture fraction of 11.6 years over 33 years of service means the [marital] portion would be 35% of the medical retirement benefit. Under this analysis, the marital share of the medical retirement benefit equals [$68,815[8]] and [Gregory's] one half-share would be $34,407.

Thus, the superior court effectively awarded Gregory 18% of the PERS medical benefit and Patricia 82% of the benefit.

The court divided the rest of the marital estate, including the PERS pension, 50/50. By splitting the PERS medical benefit 18/82 and the rest of the marital estate 50/50, the court effectively awarded Gregory 41% of the estate and Patricia 59% of the estate (accepting Miller's valuations of the PERS benefits).

Gregory now appeals. He argues that the superior court "erred in characterizing [the] PERS medical retirement benefits as a 'windfall' " and in determining "that the coverture fraction 'does not technically apply.' " He further argues that the court erred in "imput[ing] an additional 21.4 years of theoretical" employment to Patricia, thus reducing "the coverture . . . from 100% to 35%." He contends that the court should have considered the full value of the PERS medical benefit in dividing the marital estate 50/50.

## III.   STANDARD OF REVIEW

The equitable distribution of a marital estate is a three-step process. First, the trial court "determin[es] what property is available for distribution" — that is, the

---

[8]     In its analysis, the superior court stated that the marital share is $68,615. But we substitute $68,815 because this is the value the superior court provided in its property table and is more consistent with the court's determination that Gregory's "one half-share would be $34,407."

court characterizes property as marital or separate.[9]  Second, the trial court values the property.[10]  And third, the trial court "divid[es] the property equitably."[11]

The first step — the characterization of property as marital or separate — may require the trial court to make factual findings concerning "the parties' intent, actions, and contributions to the marital estate."[12]  We review these factual findings for clear error, "but whether the trial court applied the correct legal rule . . . is a question of law that we review de novo."[13]  "The second step, valuation of assets, is a factual determination that we review for clear error."[14]  "We review the trial court's third step, the equitable allocation of property, for an abuse of discretion."[15]  We will find an abuse of discretion if the division was "based on a clearly erroneous factual finding or mistake of law," or if the division was "clearly unjust."[16]

---

[9]     *Horning v. Horning*, 389 P.3d 61, 63-64 (Alaska 2017) (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[10]     *Id.* at 63.

[11]     *Id.* (quoting *Limeres*, 320 P.3d at 296).

[12]     *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

[13]     *Id.* (quoting *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005)).

[14]     *Id.*

[15]     *Id.*

[16]     *Wagner v. Wagner*, 386 P.3d 1249, 1251 (Alaska 2017).

## IV. DISCUSSION

In *Hansen v. Hansen* we explained that "post-retirement health insurance benefits are compensation for work previously performed."[17] Accordingly, retirement "[h]ealth insurance benefits earned during the marriage are a marital asset of the insured spouse," whereas retirement health insurance benefits earned before or after the marriage are typically the insured spouse's separate asset.[18]

If a spouse earned a medical retirement benefit through employment both during and outside the marriage, the benefit will be partly marital property and partly separate. In that situation, the trial court must "determine the percentage of the benefit that is marital by calculating the 'coverture fraction.' "[19] "This fraction is calculated by dividing the number of years worked during the period of coverture" — that is, the number of years worked for the employer during the marriage — "by the total number of years worked" for the employer.[20]

Thus, the coverture fraction is a tool used during the characterization step of the equitable distribution process. It is used to determine the portion of a retirement medical benefit (or any other retirement benefit) that should be counted as marital property and the portion that should be counted as separate property.[21] The coverture

---

[17] 119 P.3d 1005, 1015 (Alaska 2005).

[18] *Id.*; *see id.* at 1009 ("Marital property includes all property acquired during the marriage 'excepting only inherited property and property acquired with separate property which is kept as separate property.' " (quoting *Lewis v. Lewis*, 785 P.2d 550, 558 (Alaska 1990))).

[19] *Id.* at 1015.

[20] *Id.*; *see also Engstrom v. Engstrom*, 350 P.3d 766, 770-71 (Alaska 2015).

[21] *See* 2 TURNER, *supra* note 7, § 6:25, at 150 ("[T]he coverture fraction is (continued...)

fraction is not used during the valuation step or the division step of the equitable distribution process. Other principles govern those steps. In particular, a trial court should value a retirement medical benefit based on "the amount of the premium subsidy provided by the employer."[22] And a trial court must divide the marital estate — which includes the marital portion of a retirement medical benefit — in light of the equitable factors in AS 25.24.160(a)(4) and "the presumption that an equal division of marital property is most equitable."[23]

In distributing the PERS medical benefit value in the present case, the superior court began its analysis correctly, by characterizing the benefit as a marital asset. The court did not calculate the coverture fraction, and there was no need for it to do so: Patricia's employment with the State occurred exclusively during her marriage to Gregory; she did not work for the State before or after the marriage, and there is nothing in the record indicating she planned to resume working for the State. Therefore all of Patricia's PERS medical benefit was marital property. Had the superior court calculated the coverture fraction, it would have equaled 100%.

After characterizing the PERS medical benefit as marital property, the superior court valued the benefit. The court implicitly accepted Miller's testimony and report and thus found that the benefit was worth $195,610. Neither party challenges this valuation on appeal.

---

[21] (...continued)
used to determine only the marital share of the pension.").

[22] *Hansen*, 119 P.3d at 1016; *see also Grove v. Grove*, 400 P.3d 109, 114-15 (Alaska 2017) (approving the use of premiums of "analogous plans" in estimating the "premium subsidy value").

[23] *Odom v. Odom*, 141 P.3d 324, 339 (Alaska 2006) (quoting *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006)).

The superior court then proceeded to the third step of the equitable distribution process, the division step. The court had concluded earlier in its analysis that it would be equitable to divide the marital estate 50/50, but the court determined that it would not be fair to divide the value of the PERS medical benefit using this ratio. The court determined that it would instead be equitable to divide the value of the PERS medical benefit by assigning 18% of the value to Gregory and 82% to Patricia. The court arrived at this ratio by calculating an adjusted coverture fraction as if Patricia had continued working for the State until age 60 and then dividing the adjusted coverture share (35%) in half.

The court erred when it applied this adjusted coverture fraction during the division stage of the equitable distribution process. First, as explained above, the coverture fraction is used during the characterization step of the equitable distribution process, not the division step. The coverture fraction depends on only two variables: (1) the number of years worked during the marriage for the employer providing the benefit and (2) the total number of years (both during and outside the marriage) worked for this employer.[24] These variables are not among the equitable division factors listed in AS 25.24.160(a)(4) and they have no inherent relation to those factors. The coverture fraction is thus not suited to the task of *dividing* marital property; it should only be used for *characterizing* property as marital or separate.

Second, the court arrived at its adjusted coverture fraction using counterfactual data: The court calculated the "coverture fraction as if [Patricia] had remained working for the State" until age 60 even though she had in fact quit her job with the State in 2013 (at age 39). While the true coverture fraction was 100%, the court's adjusted coverture fraction was 35%, and the court then divided this fraction

---

[24] *See Engstrom*, 350 P.3d at 770-71; *Hansen*, 119 P.3d at 1015.

by 2 to conclude that Gregory was entitled to 18% of the PERS medical benefit. The court did not explain why calculating an adjusted coverture fraction in this manner and then dividing it by 2 would produce an equitable ratio for distributing the value of the medical benefit.

The superior court discussed various equitable factors in its analysis. First, in determining that it was appropriate to divide most of the marital estate equally, the court considered each party's age, health, work history, educational background, earning capacity, and financial condition. Second, in deciding how to divide the PERS medical benefit, the court considered "the financial condition of the parties, the conduct of the parties, including any conduct causing the unreasonable depletion of assets, [and] the circumstances and necessities of the parties." In particular, the court expressed concern about Patricia being left "with no retirement except for medical benefits," and it found that various post-separation actions by Gregory had caused financial hardship to Patricia. The court moreover found that Patricia had left her employment with the State to start a daycare business with Gregory and that this plan was derailed following an incident in which Gregory assaulted Patricia, resulting in the parties' separation.

It was appropriate for the superior court to consider these circumstances in its equitable division analysis,[25] but the court failed to explain their relationship with the adjusted coverture fraction. Indeed, most of these circumstances have no apparent relationship with the coverture fraction.

One of the circumstances — the fact that Patricia left her job with the State to start a daycare business — does have an arguable connection to the adjusted coverture

---

[25]    In particular, although a trial court may not consider marital fault — that is, fault for the breakdown of the marriage — in dividing the marital estate, the court may consider the parties' conduct and how that has affected their financial situations. *See* *Jerry B. v. Sally B.*, 377 P.3d 916, 935 (Alaska 2016).

fraction. Had Patricia not left her job with the State — and if Patricia had been projected to continue working for the State until retirement age — the court's coverture fraction would have been legally accurate. By applying the adjusted coverture fraction, the court arguably gave Patricia the benefit of the coverture fraction that she lost by quitting her job with the State.

But this reasoning rests on a misunderstanding of the coverture fraction's purpose. The coverture fraction is not a benefit or a right that Patricia forfeited when she quit her job with the State. Nor is the coverture fraction designed — in the superior court's words — to prevent "marital retirement benefits that vest during a marriage from becoming a windfall to the other spouse." Rather, as explained above, the coverture fraction is a tool for determining what portion of a retirement benefit is marital property. Moreover, Patricia did not lose any of her PERS medical benefit by quitting her job with the State because the benefit had already vested. Application of an adjusted coverture fraction thus did not compensate her for anything she lost.

It could be argued that by reducing Gregory's share of the PERS medical benefit value, the coverture fraction addressed the superior court's concerns about Patricia's finances and retirement needs. But if the adjusted coverture fraction did address these concerns, it did so on an entirely ad hoc basis. Application of a coverture fraction less than 100% always reduces the share of the retirement benefit subject to division — and thus, in a way, helps to protect the needs of the spouse who earned the benefit — but the *amount* by which the coverture fraction reduces the marital share does not have any inherent relation to that spouse's needs.

In sum, it was error for the superior court to apply the adjusted coverture fraction during the division stage of the equitable distribution process: The coverture fraction was not designed — and is not suited — for this purpose, and the adjusted coverture fraction in this case had no legitimate relation to the various equitable factors

that the superior court considered. Because the superior court exercised its discretion in light of an erroneous legal principle, we must reverse the court's distribution of the marital estate and remand for further consideration. On remand, the superior court should apply the actual coverture fraction and thus include the entire retirement medical benefit in the marital estate. Because application of the actual coverture fraction "will affect the marital estate's overall value," the court "may revisit the larger question of how best to equitably divide" the marital estate.[26] The court should divide the estate according to the statutory equitable principles.

## V.    CONCLUSION

We REVERSE the superior court's application of the adjusted coverture fraction to Patricia's retirement medical benefit. We REMAND so that the superior court can apply the actual coverture fraction and equitably divide the marital estate.

---

[26]    *Grove*, 400 P.3d at 115-16 (quoting *Hanson v. Hanson*, 125 P.3d 299, 306 n.22 (Alaska 2005)).