*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| YVETTE M. WILKINS, | ) |
| | ) Supreme Court No. S-16618 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-15-08094 CI |
| v. | ) |
| | ) **O P I N I O N** |
| PAUL D. WILKINS, | ) |
| | ) No. 7348 – March 29, 2019 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant. Michael Gershel, Law Office of Michael Gershel, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.
CARNEY, Justice, dissenting.

## I.  INTRODUCTION

A wife with serious medical conditions filed for divorce, but during trial the parties agreed to a legal separation to ensure the wife's continued access to her husband's employer-sponsored health insurance. The separation agreement's primary focus was delaying the divorce for 4 years, until the wife reached age 62 and became eligible for

36 months of post-divorce continuing health insurance coverage through the husband's employer-sponsored health insurance. The superior court divided the marital estate and ordered the husband to pay spousal support for 3 years and to pay for the wife's health insurance coverage after the expected later divorce. The wife appeals, arguing that the court erred by failing to value the husband's post-retirement medical benefits, declining to consider her agreement to legally separate as a factor in her favor when dividing the marital estate, wrongfully conflating spousal support with its property award, and unfairly allocating the overall property division. We reverse the court's ruling that it did not need to value the husband's retirement health benefits and remand for its valuation and a renewed equitable property distribution consistent with this opinion.

## II.    FACTS AND PROCEEDINGS

Yvette and Paul Wilkins married in 1980. Yvette's serious medical conditions leave her unable to work and require her to take expensive medications. She receives a disability annuity and has a federal thrift savings plan. Paul works for the State of Alaska; his employer-sponsored health insurance covers a significant portion of Yvette's medical expenses. Paul's other employment benefits include retirement healthcare, deferred compensation through the Public Employees' Retirement System (PERS), and a supplemental annuity (SBS). Paul also receives military retirement and Veteran's Affairs disability benefits.

Yvette filed for divorce in 2015; she later amended her complaint to convert the proceeding into a legal separation.[1] Both Paul and Yvette believed that a legal separation postponing divorce for 7 years would allow Yvette, who was 58, to continue receiving health insurance through Paul's employer until becoming Medicare-eligible

---

[1]    A court may grant legal separation upon finding that the parties are incompatible and that preserving the marriage protects significant legal, financial, social, or religious interests. AS 25.24.410.

at 65. Paul, who was 57, opposed the proposed lengthy legal separation, and the divorce trial began.

At trial Yvette presented expert testimony regarding valuation of Paul's post-retirement health insurance benefits. Basing his valuation estimates on medical-costs trends discounted to present value, the expert provided a range of values corresponding to Paul's normal, probable, and expected retirement ages.

During trial the court observed that legally separating could delay divorce by only 4 years rather than 7 as the parties had assumed. Because Yvette was eligible for 36 months of post-divorce health insurance coverage under federal law,[2] a separation need only remain in effect for the next 4 years until she turned 62. She then could obtain COBRA coverage until becoming eligible for Medicare at 65. Paul agreed to this shorter legal separation and to not file for divorce until Yvette turned 62. He also agreed to pay for Yvette's COBRA coverage.

The court later issued a "Decree of Legal Separation," directing that its property division order "constitutes a final division of the marital estate." In that property division order the court stated that Yvette's medical needs "make it nearly impossible simply to divide the marital estate (even unequally) and give the parties financial independence." The court identified its "primary and essential goal" as ensuring that "Yvette has adequate medical coverage" and stated that legal separation would provide the parties "equal health care coverage," which "eliminates the need to place an artificial value on the employer's contribution to Paul's healthcare coverage during his retirement."

---

[2] *See* Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. §§ 1161-1169 (2012).

The court awarded Yvette 50% of the marital share of Paul's military retirement benefits by qualified military retirement order, and, by qualified domestic relations orders, 55% of the marital share of his PERS and roughly 20% of the marital share of his SBS accounts. Yvette retained the marital home, as she had requested; she was required to refinance in her name and release Paul from the mortgage obligation. The court awarded Paul the remaining value of his military benefits, PERS, and SBS accounts. The court also distributed a variety of other assets and liabilities, including ordering Paul to pay the parties' remaining debts. Finally the court ordered Paul to pay spousal support for 36 months and to pay for Yvette's post-divorce COBRA coverage.

Yvette moved for reconsideration, arguing that the court erred by failing to value Paul's post-retirement health benefits and by placing greater weight on her insurance costs than on other factors. She also requested a more equitable property division. The court denied the motion. Yvette appeals.

## III. DISCUSSION

There are three basic steps in equitably dividing marital assets: "(1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[3] Yvette argues that the superior court erred by not valuing Paul's post-retirement health insurance benefits.[4] She requests the court be directed to value them and consequently redistribute the marital estate. We agree and remand for the court to do so.[5]

---

[3]     *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013).

[4]     *See Hansen v. Hansen*, 119 P.3d 1005, 1015 (Alaska 2005) (holding that health insurance benefits earned during marriage are marital assets).

[5]     *See Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017) ("A court's decision whether to value personal property . . . is a legal question that we review de novo."

(continued...)

-4-                                                                7348

In *Grove v. Grove* we reversed the superior court's order requiring the husband to pay his wife's post-divorce health insurance premiums as an alternative to distributing the value of his post-retirement health benefits.[6]   We held that this alternative distribution "[did] not qualify as a valuation . . . and [could] not substitute for an appropriate equitable distribution of the marital estate."[7] Despite noting the difficulty in valuing post-retirement benefits, we nonetheless instructed the superior court on remand to rely on expert testimony and value the benefits consistent with Alaska law.[8]

The superior court in this case, in exchange for "freeing Paul from the house obligation after a reasonable period," ordered Paul to pay spousal support and Yvette's COBRA costs.  The court stated that this exchange "eliminates the need to place an artificial value on the employer's contribution to Paul's healthcare coverage during his retirement.  That value simply cannot be captured or transferred to Yvette in any other meaningful way."  But this "equalization payment" cannot qualify as a valuation.[9] As we stated in *Grove,* absent findings about the value of marital property, we have "no 'means of evaluating whether an equitable distribution has been achieved'; not making such findings 'constitutes reversible error.' "[10]

When in *Hansen v. Hansen* we first identified post-retirement health benefits as a potential marital asset subject to valuation and division, we stated, without

---

[5]     (...continued)
(citing *Mellard v. Mellard*, 168 P.3d 483, 486 (Alaska 2007))).

[6]     *Id.* at 116.

[7]     *Id.* at 114.

[8]     *Id.* at 115.

[9]     *See id.* at 114.

[10]     *Id*. (quoting *Cox v. Cox*, 882 P.2d 909, 918 (Alaska 1994)).

any analysis or discussion, that when valuing this asset the superior court "should look" to the employer's premium subsidy rather than to "either the proceeds or the cost of procuring comparable insurance."[11] We recently reiterated that *Hansen* is the controlling law on valuing post-retirement health benefits, stating that we had not been asked to overrule it.[12] But we note two things: First, we have approved variations of the premium subsidy approach;[13] and second, other courts have permitted valuation methods we summarily discounted without discussion in *Hansen*:

> First, "a trial court might value health insurance benefits by considering the cost of obtaining comparable alternative benefits." Second, the court could "discount[] to present value all the premiums an employer had agreed to pay on behalf of a party" over the party's future life expectancy. Third, the trial court could "discount[] to present value the expected costs of the medical services a health insurance plan would cover" during the party's expected lifetime.[14]

---

[11]     119 P.3d 1005, 1016 (Alaska 2005) (citing BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.26 (2d ed. Supp. 2004)).

[12]     *Grove*, 400 P.3d at 114. *See also Gordon v. Gordon*, 425 P.3d 142, 148 (Alaska 2018) (citing *Hansen* for the proposition that courts should value retirement medical benefits based on employer-provided premiums); *Ethelbah v. Walker*, 225 P.3d 1082, 1089 (Alaska 2009) (noting that *Hansen* requires courts to value retirement health insurance benefits based on employer premium subsidies).

[13]     *See Engstrom v. Engstrom*, 350 P.3d 766, 771-72 (Alaska 2015) (using an "individual rate," which is "the amount the employee would pay if she were required to pay her own premiums to insure only herself"); *Ethelbah*, 225 P.3d at 1090 (calculating values using individual, rather than composite, rate).

[14]     2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.90 (3d ed. 2017) (quoting *Bingley v. Bingley*, 935 N.E.2d 152, 157-58 (Ind. 2010)); *see also Paul v. Paul*, 648 So. 2d 1211, 1213 (Fla. Dist. App. 1995) (remanding for benefits' valuation using cost of comparable policy if husband had procured it for himself on private

(continued...)

We now recognize that our one-size-fits-all premium subsidy approach to post-retirement health insurance benefits may not have been correct, and we leave it to the superior court in the first instance to exercise its gate-keeping function with respect to expert witness approaches to valuing these assets.

It was error not to value Paul's post-retirement health insurance benefits. We remand for the court to provide a value, and, because this value likely will affect the marital estate's overall value, the court may, in its discretion, need to reconsider its distribution of the marital estate. We therefore decline to address Yvette's arguments that the superior court: abused its discretion by emphasizing her medical needs over her purported consideration for agreeing to legally separate; improperly tied its spousal support and property division awards together; and made an overall manifestly unjust property award. These issues may be addressed on remand.

## IV. CONCLUSION

We REVERSE the superior court's ruling that it did not need to value Paul's retirement health insurance benefits and REMAND for valuation and equitable division consistent with this opinion.

---

**14** (...continued)
insurance market).

CARNEY, Justice, dissenting.

Because I find that unique facts — most significantly the parties' agreement to a legal separation in lieu of a divorce — distinguish this case from any other in which we have reviewed the financial impact of a marriage's end, I respectfully dissent from the court's decision to reverse and remand the superior court's treatment of medical benefits.

As the court acknowledges, the superior court adopted the parties' shared goal of ensuring that "Yvette has adequate medical coverage" for her serious medical needs.[1] The superior court not only recognized that the impetus for the divorce trial itself was the parties' disagreement over how to best achieve that goal, it offered its own alternative, which the parties accepted when they agreed to a four-year legal separation instead of a decree of divorce.[2]

The mechanism by which this legal separation would accomplish the goal of providing Yvette with adequate medical coverage is detailed in the court's Order. Paul specifically agreed to the period of separation so that Yvette could continue to be covered under his health insurance until she turned 62. He also agreed that for three years, until she turned 65 and thereby became eligible for Medicare and no longer required coverage under his insurance, he would continue paying for her to have COBRA coverage.

The parties' separation agreement thus specifically required their ongoing "financial entanglement" until Yvette turned 65. This specific agreement renders their

---

[1]     Opinion at 3.

[2]     Opinion at 2-3.

agreement unlike the arrangement we disapproved in *Grove v. Grove*.[3] In that case we agreed with the husband, who objected that he should not be required to remain financially entangled with his former wife.[4]

Based upon the unique nature and the limited duration of the specific agreement that the parties reached to achieve the shared goal of maintaining adequate medical insurance for Yvette's significant health needs, I would affirm the superior court's order implementing their agreement.

---

[3]     400 P.3d 109 (Alaska 2017).

[4]     *Id.* at 115.