NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DONAVIN G. BENDER, | ) | |
| | ) | Supreme Court No. S-18345 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-20-07549 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| HOLLY A. BENDER, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2027 – May 1, 2024 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Amanda M. Lancaster, Law Offices of Blake Fulton Quackenbush, Anchorage, for Appellant. John J. Sherman, Sherman Law Office, LLC, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

A husband appeals various aspects of the superior court's property division, spousal support, child support, and attorney's fee orders entered in connection with his divorce. We affirm the property division and spousal support orders, but vacate and remand the child support and attorney's fee orders for further consideration.

---

\* Entered under Alaska Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

Holly and Donavin Bender married in 2004. They had two children during the marriage. Holly primarily cared for the children and occasionally worked part-time jobs paying $12 an hour or less. Donavin was an active-duty servicemember.

Donavin retired from the military in 2016 under the Temporary Early Retirement Authority program. He receives Veterans Affairs disability benefits and Combat-Related Special Compensation (CRSC). Donavin testified that he and Holly agreed to choose CRSC benefits because they are not taxable. CRSC is not "retired pay" subject to division at divorce.[1]

Donavin also receives TRICARE health benefits. He is currently enrolled in TRICARE Select, a premium health plan, but also has access to basic TRICARE for life. Donavin has a Thrift Savings Plan (TSP) as well. The TSP is a defined-contribution retirement savings plan for government employees, similar to private 401(k) plans.[2] The TSP was valued at $77,683 on the eve of the couple's separation.

On April 11, 2020, Holly and Donavin separated. From that date until June 2021, Holly remained in the marital home and Donavin lived elsewhere. Donavin paid the mortgage and other expenses on the home during this time. Holly filed for divorce in August 2020.

The superior court issued a custody decree in April 2021, granting the parties joint legal custody of the children but awarding Holly primary physical custody. The custody decree reserved all other issues of divorce, child support "other than application of [Alaska] Civil Rule 90.3," and the division of property and debt. The

---

[1]    *See* 10 U.S.C. § 1413a(g) (explaining CRSC payments are not "retired pay"); 10 U.S.C. § 1408 (laying out requirements for payment of retired pay in compliance with court orders, including upon divorce).

[2]    *See* 5 U.S.C. §§ 8351, 8437, 8440.

superior court issued a child support order awarding Holly $2,835 per month starting on May 4, 2021.

Holly and the children moved to North Carolina in June 2021. Donavin then moved back into the marital home.

At the time of the divorce trial Holly made about $40,000 per year. Donavin was working at the Transportation Security Administration, making $101,000 per year. His military benefits gave him an additional tax-free income of about $60,000 per year, for a total annual income of about $161,000.

In December 2021 the superior court held a trial to determine the remaining divorce issues, including the division of marital property, child support, and spousal support.

In its findings of fact and conclusions of law, the superior court valued the entire marital estate at $725,316.23. The court divided the marital property 55/45 in favor of Holly, awarding her $146,386.19 of the marital assets less marital debts and an equalization payment of $252,560.14 from Donavin. The court valued Donavin's TRICARE health benefits at $307,913. The court awarded the entire value of the TSP at the date of separation, $77,683, to Holly. The superior court issued an accompanying final debt and asset spreadsheet, but portions of the columns reserved for the court's valuations and final award — columns J, L, and M — were left blank.

The superior court assumed Donavin wanted to remain in the marital home because he currently resided in the home, did not "file a motion to sell the house early," and "expressed an intention to remain in the marital home." The court ruled that if Donavin wished to remain in the marital home, he would have to pay Holly the balance of the equity in the home, or $198,053. It explained that if Donavin did not want or could not afford to retain the marital home, he could sell the home and put the proceeds toward the equalization payment. Donavin requested credits for house-related expenses paid while Holly and the children lived in the marital home without him. The superior

court declined to award Donavin credits because of the parties' economic circumstances and because Donavin expected to "receive the home and retain it for future economic potential."

The superior court ordered Donavin to pay Holly $34,020 in past-due child support for the period between the April 2020 separation date and May 4, 2021, when its earlier child support order went into effect.

The court also awarded Holly $1,500 per month in spousal support to continue until Donavin paid Holly the balance of the equity in the home. It ruled that once Donavin paid Holly the home equity, his spousal support obligation would end. But Donavin would then be required to pay Holly at least $1,500 per month until the remaining equalization payment was paid in full. Finally, the court awarded Holly $5,000 for attorney's fees.

Donavin moved for reconsideration, which the court denied. Donavin filed a notice of appeal in March 2022.

In early 2023 Donavin filed a motion for relief under Alaska Civil Rule 60(b) to address the blank columns in the final debt and asset spreadsheet. The court denied the motion and clarified that it had intended to completely adopt Holly's proposed distribution of the marital estate.

## III. DISCUSSION

On appeal Donavin claims the superior court incorrectly valued his TRICARE benefits, failed to grant him credits for home-related expenses, wrongly assumed he wanted the marital home, improperly changed the balance of the property division between the oral ruling and final order, and incorrectly valued the TSP. He also contests the awards of spousal support and child support. Finally, Donavin argues that the superior court made several procedural and clerical errors.

**A.    The Superior Court Did Not Err In Dividing Marital Property.**

Equitable distribution of property upon divorce involves three steps: "(1) determining what property is available for distribution; (2) placing a value on that property; and (3) allocating the property equitably."[3] The first step has mixed questions of law and fact; "we review the superior court's legal conclusions de novo and its factual findings for clear error."[4] The second step is a factual determination we review for clear error.[5] We review the third step "for an abuse of discretion, reversing only if it is 'clearly unjust.' "[6] This appeal touches on all three steps.

**1.    The superior court did not err by relying on Holly's expert's valuation of TRICARE benefits.**

When dividing marital property, the superior court must assign a value to post-retirement medical benefits like TRICARE.[7] To value post-retirement health benefits, the superior court must "exercise its gate-keeping function with respect to expert witness approaches to valuing these assets."[8] In *Hansen v. Hansen* we suggested that courts should value health benefits by looking to the amount of the premium subsidy provided by the employer.[9] But we have since explained that other methodologies may also be acceptable.[10] The superior court's reliance on an expert's

---

[3]    *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991).

[4]    *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015).

[5]    *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017); *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005).

[6]    *Grove*, 400 P.3rd at 112 (quoting *Hansen*, 119 P.3d at 1009).

[7]    *Id.* at 115-16.

[8]    *Wilkins v. Wilkins*, 440 P.3d 194, 198 (Alaska 2019).

[9]    119 P.3d at 1016.

[10]    *See Wilkins,* 440 P.3d at 197-98 (citing 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6.90 (3d ed. 2017)); *see, e.g., Engstrom v. Engstrom,*

factual conclusions is reviewed for clear error, and the court's choice of valuation method is reviewed de novo for legal error.[11]

Donavin argues that the superior court erred by relying on Holly's expert's valuation, which he asserts "did not take into account growth rates, discount rates, or net discount rates." But this is not true. Holly's expert's report explained that her valuation rested on "five fundamental factors," including the growth rate of per capita health care costs and the discount rate used to reduce future costs to present value. The report went on to explain how the expert calculated the appropriate growth and discount rates. Holly's expert also testified at trial that she considered growth and discount rates in her valuation.[12]

Donavin also argues that Holly's expert erred by failing to consider that Donavin could have provided Holly with "COBRA coverage or some version of a like coverage." We expressly disapproved of this method in *Grove*, in which we reversed the superior court's decision to order the husband to provide health benefits to the wife instead of valuing and allocating his TRICARE benefits.[13]

Additionally, Donavin argues Holly's expert failed to consider whether Holly could obtain health benefits from another source — specifically, from her job or

---

350 P.3d 766, 771-72 (Alaska 2015) (using "individual rate" to value retirement medical benefits, which is "the amount the employee would pay if she were required to pay her own premiums to insure only herself").

[11]    *Engstrom*, 350 P.3d at 772.

[12]    Donavin also argues that Holly's expert adjusted her discount rate and inflation rate to reflect COVID-19 numbers, so her estimates are "over inflated." But Holly's expert explained at trial that she took steps in her valuation process to guard against the large fluctuations caused by COVID, specifically by basing the discount rate "on the IRS federal rates required for pension valuations" rather than on the bond market since "the bond markets have been in total upheaval" "since the COVID-19 pandemic began."

[13]    *Grove v. Grove*, 400 P.3d 109, 114-15 (Alaska 2017).

from Medicare later in life.  But Holly's access to other health care is irrelevant to the value of Donavin's TRICARE benefits.  "TRICARE benefit is marital property to the extent that it was earned during the marriage."[14]  In *Horning v. Horning* a husband accrued post-retirement TRICARE benefits during the marriage and the wife was eligible for health care through the Indian Health Service (IHS).[15]  The superior court did not "classify, value, or distribute either party's healthcare, finding instead that each had an equal benefit that was in essence a wash for the purpose of dividing the marital estate."[16]  We held that offsetting marital property (the TRICARE benefits) with separate property (the IHS healthcare) was an erroneous invasion of the wife's separate property.[17]  For the same reasons, Holly's future eligibility for Medicare cannot be used to offset the value of TRICARE benefits accrued during marriage, which are a marital asset.[18]

Holly's expert based her valuation on the employer premium subsidy, and explained the logic used for other elements of her valuation, such as the inflation rate. The superior court's use of Holly's expert's valuation aligns with our instruction in *Hansen*, *Grove*, and *Burts*, so the court did not err.

Donavin also suggests that it would be unfair to "assign[] a cash value" to his TRICARE benefits because they are non-transferable, citing the *Grove* decision.

---

[14]     *Horning v. Horning*, 389 P.3d 61, 64 (Alaska 2017).

[15]     *Id.* at 63.

[16]     *Id.* (internal quotation marks omitted).

[17]     *Id.* at 64 (noting that such invasion is permitted only "when the balancing of the equities between the parties requires it," which was not the case when wife bore greater economic impact from divorce (quoting AS 25.24.160(a)(4))).

[18]     Holly's expert stated that she considered the impact of Medicare to the extent that Medicare enrollment, as required by most retiree health benefit plans, would reduce the premium subsidy in later years and therefore the overall value of Donavin's TRICARE benefits.

The decision does not support Donavin's argument. In *Grove* we recognized the inherent difficulty of calculating the value of TRICARE benefits.[19] However, we also held that TRICARE can and must be objectively valued, so we remanded to the superior court to value the benefit according to expert testimony.[20] We also pointed to our prior decision in *Burts v. Burts*, where we held that an expert or an accountant could be retained to objectively value TRICARE.[21] Besides instructing the court to look generally to expert testimony, we did not lay out additional requirements for valuing TRICARE benefits (or any post-retirement medical benefits) in either *Grove* or *Burts*.

### 2. The superior court did not abuse its discretion by denying Donavin a *Ramsey* credit.

As a general rule, income a spouse earns after separation is that spouse's separate property and is not included in the marital estate to be divided.[22] Sometimes a spouse must spend separate income to preserve marital property while the divorce is pending, such as by paying the mortgage on a marital home. We have "required that trial courts consider payments made to maintain marital property from post-separation income when dividing marital property."[23] Credits for such payments are called *Ramsey* credits, after the case in which we authorized them.[24] "We have not, however, held that the spouse who makes such payments must necessarily be given credit for

---

[19]     *Grove v. Grove*, 400 P.3d 109, 114-15 (Alaska 2017).

[20]     *Id.* at 115-16.

[21]     *Burts v. Burts*, 266 P.3d 337, 343 n.30 (Alaska 2011).

[22]     *See Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992) (citing *Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986)).

[23]     *Id.* (citing *Doyle v. Doyle*, 815 P.2d 366, 369 n.5 (Alaska 1991)).

[24]     *See, e.g.*, *Rohde v. Rohde*, 507 P.3d 986, 995 (Alaska 2022); *Hall v. Hall*, 446 P.3d 781, 783 (Alaska 2019).

them in the final property division."[25]  For example, when one spouse has made post-separation payments on the marital home in which the other spouse was living, we have affirmed the superior court's denial of credit for those payments in light of factors such as the disparity between the spouses' income.[26]  The superior court's decision to grant or deny the credit is reviewed for abuse of discretion.[27]

Donavin argues that the superior court abused its discretion by failing to give him a *Ramsey* credit for mortgage payments and other house-related payments he made after separation, when Holly and the children lived in the home without him.  The superior court explicitly considered whether to award Donavin a credit for the payments he made on the home, but ultimately decided against it.  The court's decision not to award the credit is supported by its findings on Holly's and Donavin's vastly disparate incomes.  The court also noted that Donavin did not file a motion to sell the house earlier and that it appeared "to have been his understanding that he would receive the home and retain it for future economic potential."  The decision not to award Donavin a *Ramsey* credit was not an abuse of discretion.

Donavin also argues that he should have been given a *Ramsey* credit based on our decision in *Hockema v. Hockema*.[28]  But *Hockema* involved a different kind of credit.  In *Hockema* the superior court credited the husband's spousal support payments by the amount he paid on a mortgage until his wife left the home.[29]  The court did not

---

[25]  *Ramsey*, 834 P.2d at 809.

[26]  *Harrelson v. Harrelson*, 932 P.2d 247, 253 (Alaska 1997) ("Given the parties' highly disparate incomes, the trial court did not abuse its discretion in denying the credit."); *Conner v. Conner*, 68 P.3d 1232, 1238 (Alaska 2003) ("We have routinely upheld decisions where the trial court has denied credit for post-separation house payments because of the disparity in the parties' incomes.").

[27]  *Harrelson*, 932 P.2d at 253.

[28]  403 P.3d 1080, 1090-91 (Alaska 2017).

[29]  *Id.* at 1091.

credit the payments as part of the parties' property division.[30]  Therefore *Hockema* does not support Donavin's claim for a *Ramsey* credit.

### 3. The superior court did not err by assuming the marital home would be awarded to Donavin.

Donavin argues that the superior court erred by "assuming" he wished to be awarded the marital home, but he does not explain how he believes this negatively affected the property distribution.

When Donavin submitted a spreadsheet with proposed debts and assets to the superior court, he proposed awarding the full value of the marital home to himself. The superior court did not err by accepting Donavin's proposal.[31]

### 4. The superior court did not change the property distribution between the oral ruling and the final order.

Donavin claims the superior court did not divide the property in the final written order according to the oral ruling. He asserts that instead of the 55/45 division determined in the oral ruling, the written order awarded Holly 87% of the total estate.

Donavin's argument contains numerous errors. First, his percentages are based on the value of the marital estate he proposed at trial — $458,700.38 — not the value the court actually found — $725,316.97. Second, Donavin ignores the debt the superior court allocated to Holly, overinflating the portion of the estate she was awarded.

The superior court did not change the property division between issuing the oral judgment and the written findings of fact and conclusions of law. In both rulings the superior court awarded Holly 55% of the marital estate. Holly was awarded $146,386.19 of the marital assets less marital debts, plus an equalization payment of

---

[30]     *Id.*

[31]     *See Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 71 P.3d 811, 818 (Alaska 2003) ("Where a party concedes a fact at trial, that fact cannot later be contested on appeal.").

$252,560.14, amounting to $398,946.33 of the total marital estate. This was 55% of the court's valuation of the entire marital estate, $725,316.97.

### 5. The superior court did not clearly err in valuing the Thrift Savings Plan nor abuse its discretion in awarding Holly the entire marital portion of the account.

Donavin challenges the superior court's classification, valuation, and division of the TSP. Donavin argues the superior court "should have awarded shares to allow for market losses and gains." He also claims that $37,338.63 of the TSP was non-marital. But the superior court correctly followed the applicable rules when it classified and valued the TSP.

Property generally should be classified at the separation date and valued as close as practicable to the trial date.[32] At trial Holly's expert presented evidence of the number of shares in the TSP at the time of separation. Holly and Donavin separated on April 11, 2020. As of March 31, 2020 — less than two weeks before the date of separation — the TSP had 562.05 C-fund shares and 469.88 S-fund shares. These shares were worth $40,344. Holly's expert then testified that these shares, acquired before separation, increased in value after separation, so they were worth $77,683 at the time of trial.

The superior court classified as marital property only the shares acquired before the date of separation. And it found the marital shares had a value of $77,683 at the time of trial. Contrary to Donavin's argument, the increase in the TSP value from $40,344 to $77,683 was not because the superior court classified additional shares Donavin acquired after separation as marital — the marital portion of the TSP merely increased in value by the time of trial. The court did not clearly err in classifying or valuing the TSP.

---

[32]     *See Stevens v. Stevens*, 265 P.3d 279, 284 (Alaska 2011) (citing *Cox v. Cox*, 882 P.2d 909, 917 (Alaska 1994)).

Donavin also argues the superior court awarded Holly "a dollar amount" for the TSP and failed to distribute the shares to Holly by Qualified Domestic Relations Order. The superior court awarded Holly "the entire balance of Donavin's Thrift Savings Plan (TSP) account as of April 10, 2020, valued at trial at $77,683." We read this to mean that the court awarded Holly all the shares in the TSP at the time of separation, which had a value of $77,683 at the time of trial, but not any shares acquired after the date of separation, which were Donavin's separate property. In other words, the court valued the marital portion of the TSP account, then awarded Holly the entire marital portion. We see no error in the court's ruling.

## B. The Superior Court Did Not Abuse Its Discretion By Awarding Temporary Spousal Support To Holly.

Donavin argues the superior court erred by awarding Holly temporary spousal support. Donavin was ordered to pay Holly $1,500 per month until she received the proceeds from the sale of the marital home.[33]

Courts may consider a variety of factors when ordering spousal support as part of a divorce judgment.[34] Spousal support is generally disfavored because it requires "one person to support another on a long-term basis in the absence of an existing legal relationship."[35] We have instructed courts to "address spouses' financial needs through property distribution, rather than through awards of spousal support,"[36] wherever possible. But "[i]f necessary to address a disparity in the parties' financial

---

[33] Donavin also asserts that Holly made an unlawful request for lifetime spousal support that would have impaired his right to his disability payments under CRSC. This claim is irrelevant to the temporary spousal support award the superior court actually made — it did not award lifetime spousal support and it did not divide Donavin's CRSC.

[34] AS 25.24.160(a)(2).

[35] *Hockema v. Hockema*, 403 P.3d 1080, 1089 (Alaska 2017).

[36] *Id.*

needs and earning power, the court may award spousal support for a limited duration."[37] A court's award of spousal support is reviewed for abuse of discretion.[38]

Temporary spousal support generally takes the form of "reorientation alimony" or "rehabilitative alimony."[39] Reorientation alimony is "intended to provide the lower-earning spouse 'an opportunity to adjust to the changed financial circumstances accompanying a divorce' and should be awarded only where unequal property division cannot adequately meet the spouse's reasonable needs."[40] It is meant to be transitional and temporary, generally lasting no longer than a year.[41] We noted in *Hockema v. Hockema* that reorientation alimony may be appropriate when "one spouse requires time to organize or sell non-liquid property."[42]

In *Dodson v. Dodson* we upheld an award of reorientation support that was to be paid by the husband to the wife until either the sale of the marital residence or the wife obtained a teaching job (or comparable position), whichever came first.[43] When we upheld the award, we pointed to the fact that the husband's annual salary was over $190,000, while the wife would "have to adjust to living on a teacher's salary," and most of the wife's property appeared to be "neither liquid nor income-producing."[44]

---

[37] *Id.*

[38] *Id.*

[39] *Id.* Rehabilitative alimony is intended to further a spouse's job training "or other means directly related to entry or advancement within the work force." *Id.* (quoting *Dundas v. Dundas*, 362 P.3d 468, 480 (Alaska 2015)). Rehabilitative alimony was not awarded in this case.

[40] *Id.* (quoting *Dundas*, 362 P.3d at 480).

[41] *See id.*

[42] *Id.*

[43] 955 P.2d 902, 910-11 (Alaska 1998).

[44] *Id.* at 911.

We noted that "reorientation alimony is appropriate to provide temporary support 'pending the sale of marital property.' "[45]

Donavin's and Holly's circumstances resemble those in *Dodson*. The superior court found that Donavin's income (about $161,000) was much greater than Holly's income (about $40,000), and that the parties did not have any income-producing property. It awarded spousal support only until the marital house was sold and the proceeds given to Holly. The spousal support was transitional and intended to address Holly's financial needs while Donavin sold non-liquid property (the house). This award fits squarely within the purpose of reorientation support.

Donavin argues that reorientation support was unjustified because Holly received substantial funds during the separation period, but he fails to show that the superior court abused its discretion. Holly did receive proceeds from the sale of a marital home in North Carolina and from the sale of some household property. However, she testified that those funds were received early in the separation period, before her move to North Carolina, and were used to fund the relocation. It was not an abuse of discretion for the court to conclude that, with those proceeds already spent, Holly would need additional temporary funds to stabilize her circumstances until the equalization payment came through. Donavin also points out that the court ordered him to pay Holly proceeds from selling the marital vehicle (over $30,000) within ten days of its final property division order. Although this is a substantial sum of money, we cannot say the superior court abused its discretion in requiring Donavin to pay an additional modest monthly sum for a temporary period, especially when Donavin had the power to put a stop to those payments by selling or refinancing the home. We therefore affirm the court's award of temporary reorientation support.

---

[45] *Id.* (quoting *Davila v. Davila*, 908 P.2d 1025, 1027 (Alaska 1995)).

**C.** **We Remand The Award Of Past-Due Child Support For Further Consideration.**

Donavin did not pay child support between the parties' separation in April 2020 and May 2021, when the court issued a child support order requiring him to pay $2,835 per month. When the court later issued its property division order, it awarded $34,020 of past-due child support to Holly for the April 2020-May 2021 period. The superior court calculated this amount by multiplying Donavin's monthly child support obligation by 12 months. Donavin argues that the superior court "retroactively modified" child support or, alternatively, abused its discretion by failing to credit financial support he voluntarily provided to the children during that time. We conclude the superior court did not retroactively modify the child support. But we remand for the superior court to make factual findings and determine whether Donavin should have been given some credit against his past-due child support for his payments toward family expenses during the time in question.

**1.** **The superior court did not retroactively modify child support.**

The superior court may not retroactively modify an existing child support arrearage.[46] However, a court may retroactively impose a child support obligation for a period of time during which there was no child support order in place.[47]

Donavin relies on *Vachon v. Pugliese* and *Murphy v. Murphy* to claim the child support order was a retroactive modification, but neither case supports his

---

[46] Alaska R. Civ. P. 90.3(h)(2).

[47] *Id.*; *see also Spott v. Spott*, 17 P.3d 52, 54 (Alaska 2001) (explaining that retroactive child support is permitted if there was no support order in place for that time period); *Ogard v. Ogard*, 808 P.2d 815, 816-17 (Alaska 1991) (stating that father "clearly owed some amount of child support beginning with the date of separation" but vacating and remanding retroactive support order due to lack of factual findings); Alaska R. Civ. P. 90.3 cmt. VI.E.1 ("[Retroactive establishment of child support] will sometimes be necessary . . . when there was no other court or administrative order in effect.").

argument.[48]  In *Vachon* we reversed the superior court's denial of retroactive child support.[49]  We did so because "[t]here was no existing child support order for the period for which [the parent] sought reimbursement."[50]  We held that retroactively imposing child support obligations "[did] not modify any existing arrearage."[51]  Here, the superior court did not modify the May child support order.  Instead, like in *Vachon*, the superior court retroactively established child support for the period before May 4, 2021, when there was no child support order in place.  *Murphy* is also distinct because it involved modifications to an existing child support order.[52]

In this case no child support order existed for the time between the separation and May 2021.  The superior court did not err by retroactively imposing child support obligations for that period of time.

**2.    We vacate the award of past-due support and remand for the court to make specific findings on whether Donavin should receive a credit for voluntary payments.**

Donavin also argues that the court abused its discretion by failing to credit voluntary payments he made to support the children after separation.  According to Donavin, the superior court should have credited this voluntary support against the past-due child support he concededly owed.[53]

---

[48]    *See Vachon v. Pugliese*, 931 P.2d 371 (Alaska 1996); *Murphy v. Murphy*, No. S-10923, 2004 WL 2680926 (Alaska Nov. 24, 2004).

[49]    931 P.2d at 382.

[50]    *Id.*

[51]    *Id.*

[52]    2004 WL 2680926, at *3-5.

[53]    Donavin raises a secondary argument that the superior court did not consider that he and Holly supposedly shared physical custody before the final custody decree was issued, but Donavin has waived this argument by failing to raise it until his reply brief.  *Lewis v. State, Dep't of Corr.*, 139 P.3d 1266, 1272 n.27 (Alaska 2006). ("We do not consider arguments raised for the first time in a reply brief.").

"The superior court has some discretion to credit pre-order support given directly to the custodial parent or the children, but as always it must make sufficient findings of fact and conclusions of law to justify the credit."[54] The parent claiming the credit has the burden to show that "manifest injustice would result" if an award of past-due support is not reduced to account for voluntary support provided to the children.[55] We review the court's decision on whether to award this kind of credit for abuse of discretion.[56]

Although not entirely clear, it appears the superior court rejected Donavin's argument for a credit on the merits. Donavin conceded that he owed past-due child support from the date the parties separated until the court entered a support order in May 2021.[57] However, Donavin also requested in his trial brief that the court give him a credit for a "series of payments to maintain the marital property while also paying child support for the [m]inor [c]hildren." He described the voluntary payments as "mortgage, HOA fees, out of pocket medical bills for the minor children to name a few." Donavin cited our decision in *Ramsey v. Ramsey*, which requires courts to consider "payments made to maintain marital property from post-separation income

---

[54]    *Dundas v. Dundas*, 362 P.3d 468, 482 (Alaska 2015).

[55]    *Id; see* Alaska R. Civ. P. 90.3(c)(1) (permitting superior court to depart from standard formula when awarding child support upon clear and convincing showing that standard formula would create "manifest injustice").

[56]    *Id.*; *see also Mohammed S. v. Abeir E.*, No. S-18393, 2023 WL 5126340, at *12 (Alaska Aug. 9, 2023) (concluding trial court did not abuse its discretion in denying credit for father's payments prior to support order when father failed to demonstrate how his payments directly supported children and their mother).

[57]    Donavin's trial brief conceded he owed $31,185 in child support for the time between separation and the final child support order. Holly requested the same amount. Both Holly and Donavin miscounted the number of months between separation and the final child support order by one month. The superior court corrected the parties' error when it awarded $34,020 to Holly, or twelve months of child support at $2,835 per month.

when dividing marital property."[58]  Donavin cited no cases requiring a similar credit for child support.  Donavin's trial testimony did not specify the nature of the credit he was claiming either.  It is therefore questionable whether Donavin sufficiently alerted the court that he was seeking a credit against past-due child support as an alternative to a *Ramsey* credit.  And the superior court did not mention a potential credit against past-due support in its findings and conclusions.

However, Donavin made this argument expressly in his motion for reconsideration.  He argued that if the court ordered him to pay past-due support, it should consider Holly's testimony that she "paid for absolutely nothing after separation" and that Donavin paid expenses to support the family totaling more than $67,000 after separation.  He cited *Dundas v. Dundas*, which addressed when the superior court may credit support given directly to the custodial parent or children against a child support arrearage.[59]  Holly responded to this argument by disputing Donavin's assertion that she paid for nothing during that period of time; she pointed to testimony that she paid "for interim expenses such as groceries and credit card payments."  In a summary order the superior court denied reconsideration for the reasons stated in Holly's opposition.  Therefore we presume the superior court considered Donavin's argument for a credit and rejected it on the merits for the reasons stated by Holly.

Donavin testified about a number of expenses he paid before the May child support award was entered, including mortgage payments, car payments, housing upkeep, utilities, cell phone bills, internet bills, and out-of-pocket medical expenses. He sought a credit for the total amount of these payments, which he calculated as

---

[58]     *Ramsey v. Ramsey*, 834 P.2d 807, 809 (Alaska 1992) (citing *Doyle v. Doyle*, 815 P.2d 366, 369 n.5 (Alaska 1991)).

[59]     362 P.3d at 482.

$85,851. Of this total, the vast majority of payments were related to the home (with a monthly mortgage of $3,450) or the vehicle (with a monthly payment of $644). Holly agreed that after separation Donavin paid "all of the normal bills [so] that the house functions," including the mortgage, car payment, car insurance, and utilities. But Holly argued that as the primary custodian she had been responsible for meeting the children's day-to-day needs, such as "groceries and things of that nature."

According to our decisions addressing credits for voluntary support, a key factor is whether payments for which the obligor spouse seeks credit actually went to support the children. If so, these payments can be credited. In *Ogard v. Ogard* we remanded an award of past-due child support for more specific findings, indicating that the superior court should adjust the award to credit the obligor for direct expenditures on the children's food, clothing, and medical expenses in "such amount as [the court] finds appropriate."[60] In *Dundas v. Dundas* we vacated the superior court's decision to credit the husband for pre-order support because the court failed to make sufficient factual findings to justify the credit.[61] We remanded, instructing that the court could credit the husband "the portion of his marital expense payments that actually went to the children's needs and interests as opposed to [the parents'] joint marital debt."[62] In a recent unpublished decision, we affirmed denial of a credit for alleged voluntary support because the obligor parent failed to demonstrate how his payments directly supported the children.[63] Although the obligor parent had paid bills on the family home, his spouse and children were living exclusively in a domestic violence shelter.[64]

---

[60]   *Ogard v. Ogard*, 808 P.2d 815, 816-17 (Alaska 1991).

[61]   362 P.3d at 482-83.

[62]   *Id.*

[63]   *Mohammed S. v. Abeir E.*, No. S-18393, 2023 WL 5126340, at *12 (Alaska Aug. 9, 2023).

[64]   *Id.*

Most of the post-separation payments Donavin made did double duty. Continuing to pay for the marital home and vehicle ensured that the children had a roof over their heads and a ride to school, significant expenses necessary to support children. Yet the mortgage, car, insurance, and utility payments also paid off marital debts or were necessary expenses to preserve valuable marital assets. We explained above that the superior court did not abuse its discretion by denying Donavin a *Ramsey* credit against the marital property division in part because Donavin was awarded the marital home. Because his mortgage payments built up the couple's equity in the home, and his other home-related payments preserved its value, Donavin benefitted from making these home-related payments. The same is true for vehicle-related payments; the vehicle netted the marital estate over $30,000 when it was later sold.

Fully offsetting Donavin's past-due support by his home- and vehicle-related payments would have given him a windfall and left the children with less support than they were entitled to. We have observed that "[c]rediting payments that provide a home for a spouse and children against child support obligations risks leaving children with insufficient support."[65] Civil Rule 90.3's child support formula "does not anticipate a support order that dedicates an unwieldy percentage of the non-custodial parent's monthly requirement to only one of the multiple needs of the children."[66] For these reasons, fully offsetting Donavin's child support obligation by his payments would have been an abuse of discretion. Those payments did not cover the full cost of raising the children during that time. Moreover, Donavin did not show how much his

---

[65] *Ruppe v. Ruppe*, 358 P.3d 1284, 1291 (Alaska 2015).

[66] *Id*.

substantial home- and car-related payments reduced the cost of supporting the children that Holly, as the primary caretaker, still bore.[67]

Nevertheless, Donavin established a "sufficient factual predicate" for a credit against his past-due support under Rule 90.3(c).[68]  The superior court, in denying reconsideration, appears to have credited Holly's testimony that she continued to pay for groceries and similar expenses after separation.  But accepting Holly's testimony does not fully address Donavin's argument that it is manifestly unjust to give him no credit for the expenses he made that directly benefited the children.  For that reason, we vacate the award of past-due support and remand for the court to address Donavin's argument in more detail.

**D.      The Superior Court Did Not Make Procedural Errors During Trial.**

**1.      The superior court did not abuse its discretion by refusing to admit one of Donavin's exhibits during trial.**

Donavin argues that the superior court erred by declining to admit exhibits describing payments Donavin made to support Holly and the children during separation.  Although Donavin refers to multiple "exhibits," the superior court refused to admit only

---

[67]      A party seeking modification under Rule 90.3(c)(1) must show that the party's voluntary contributions went to the needs of the children. *See Dundas*, 362 P.3d at 482-83 (while trial court "has some discretion to credit pre-order support," it may credit only "the portion of [the] payments that actually went to the children's needs and interests as opposed to . . . joint marital debt"); *Fredrickson v. Button*, 426 P.3d 1047, 1057-58 (Alaska 2018) (holding that proven contributions to supporting children during interim period may be credited, but unproven contributions need not be credited).

[68]      *Renfro v. Renfro*, 848 P.2d 830, 832 (Alaska 1993) (holding that superior court must make specific findings on "any provision of Rule 90.3 whose application is urged by a party where a sufficient factual predicate is established").

one such exhibit — Exhibit I.[69]  Exhibit I was a summary of evidence describing payments for household expenses that Donavin made during separation.

Alaska Evidence Rule 1006 permits voluminous evidence to be presented in the form of a summary, but requires that originals or duplicates of the evidence "be made available for examination or copying, or both, by other parties at a reasonable time and place."  The superior court's decision to admit or exclude this evidence is reviewed for abuse of discretion.[70]

Under the federal corollary to the Alaska rule, "a reasonable time" is "always a matter to be determined in light of the circumstances."[71]  Holly's attorney objected to admission of Exhibit I, arguing that he received the exhibit and its supporting evidence in an email only a few minutes prior and had not had time to review them.  The court ruled that Donavin had not made the exhibit and supporting evidence available to Holly at a reasonable time.

It was not an abuse of discretion for the court to exclude the exhibit. Donavin's attorney moved to admit Exhibit I only "an hour and a half from the end of the trial," and the underlying evidence appears to only have been received by the opposing party a few minutes prior.[72]  Additionally, after the court refused to admit

---

[69]  At trial Donavin's attorney referenced other exhibits that supported the information summarized in Exhibit I.  It appears that she was referring to Exhibits J–P (included in Donavin's excerpt on appeal), but after the court declined to admit Exhibit I, Donavin's attorney did not move to admit any of these supporting exhibits.

[70]  *Liimatta v. Vest*, 45 P.3d 310, 313 (Alaska 2002).

[71]  31 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 8045 (2d ed.).

[72]  Donavin asserts that the court permitted Holly to admit last-minute exhibits.  Holly's exhibits were different from Donavin's in a few important ways. First, none of the exhibits Holly moved to admit on the second day of trial appear to be summaries falling under Evidence Rule 1006.  Second, Donavin's attorney did not

Exhibit I, Donavin was permitted to testify to all the payments that Exhibit I had included, so any error was harmless.

**2.      The superior court did not err by giving parties unequal time during trial.**

Donavin argues that the superior court erred by giving Holly more than 65% of the trial time.  But he does not assert that this time allocation hindered him from being able to present all his evidence at trial.[73]  We have held that time limits cannot be condemned "in the abstract" and that "conclusory arguments" that a "case was curtailed do not establish error or prejudice."[74]  For this reason Donavin's conclusory argument about trial time fails.

**E.      The Superior Court Did Not Fail To Provide A Final Asset And Debt Spreadsheet.**

**1.      Because the superior court clarified that it had adopted Holly's proposed distribution, any error in failing to fully complete the property division spreadsheet was harmless.**

The superior court "must render findings of ultimate fact that support any decreed property division; the findings must be explicit and sufficiently detailed to give us a clear understanding of the basis of the trial court's decision."[75]  The findings made by the superior court "must be sufficient to indicate the factual basis for the conclusion

---

object to the admission of any of Holly's exhibits on the grounds that she had insufficient time to review them.

[73]      Toward the end of the second day of trial, Donavin's attorney expressed concern that she would not have time for redirect examination of Donavin, but she ultimately did have time for redirect.

[74]      *Luker v. Sykes*, 357 P.3d 1191, 1200 (Alaska 2015) (quoting *City of Fairbanks v. Rice*, 20 P.3d 1097, 1110 (Alaska 2000)).

[75]      *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991).

reached."[76]  "Review of the merits of the property division is precluded in most cases absent these 'threshold' findings."[77]

Donavin argues that the superior court's findings were insufficient because the final debt and asset spreadsheet issued by the court was not completely filled out.  The court did not fully complete columns J, L, and M (the columns reserved for the court's valuation and final award).  However, the superior court's separate findings of fact and conclusions of law expressly divided the marital estate 55/45 in favor of Holly and adopted Holly's proposed distribution for every asset and debt it addressed.  And in response to Donavin's motion for relief under Civil Rule 60(b), the court clarified that it had intended to adopt Holly's proposed distribution.  Because these findings and conclusions are sufficient for appellate review, there is no reversible error.

### 2.  Donavin waived his deficiency notice claim.

Donavin argues the superior court erred by failing to ensure that Holly cured a filing deficiency when she filed the proposed debt and asset spreadsheet.  He asserts that when Holly filed the proposed order, she received a deficiency notice that she never cured and, as a result, Donavin never received notice that the proposed order had been filed.  Donavin was aware that the court had asked Holly's attorney to submit a proposed debt and asset spreadsheet following the close of trial.  If Donavin truly had not been served with the proposed order before the court issued its findings of fact and conclusions of law, Donavin had an opportunity to raise this argument following the court's order.  There is nothing in the record indicating that Donavin raised this

---

[76]     *Lang v. Lang*, 741 P.2d 1193, 1195-96 (Alaska 1987).

[77]     *Id.* at 1196.

argument at any point before raising it on appeal. Donavin has therefore waived this argument.[78]

> ### 3. The superior court did not erroneously base the property distribution on a belief that the parties had reached a settlement agreement.

Donavin asserts that the superior court "sign[ed] the final order under the erroneous belief the parties agreed on the proposed Findings of Fact and Conclusions of Law." Beyond asserting that a settlement hearing had been scheduled for the day the court issued its final order, Donavin points to nothing indicating that the court was under the impression that the parties were in agreement. The court never requested that the parties reach agreement after trial or suggested that its order was contingent on the parties reaching agreement. This argument is frivolous.

## F. It Was An Abuse Of Discretion To Award Holly Attorney's Fees.

"The superior court has broad discretion in awarding attorney's fees in divorce cases."[79] "In exercising this discretion, the court must focus on the parties' relative economic situations and earning capacities."[80] "[A] party who receives a property settlement sufficient to cover incurred attorney's fees should expect to pay his or her own fees."[81] An award of attorney's fees "will generally be required 'only to the economically disadvantaged divorce litigant,' " but a court may properly decline to award fees to the lower-earning spouse as long as both parties have sufficient resources for the superior court to reasonably expect them to pay their own fees.[82] We will not

---

[78] *See Adkins v. Collens*, 444 P.3d 187, 195 (Alaska 2019) ("Arguments raised for the first time on appeal are generally waived . . . .").

[79] *Stevens v. Stevens*, 265 P.3d 279, 290 (Alaska 2011).

[80] *Carr v. Carr*, 152 P.3d 450, 457 (Alaska 2007).

[81] *Stevens*, 265 P.3d at 290.

[82] *Harrower v. Harrower*, 71 P.3d 854 (Alaska 2003) (quoting *Nicholson v. Wolfe*, 974 P.2d 417, 427 (Alaska 1999)).

reverse the superior court's award of attorney's fees unless it is "arbitrary, capricious, or manifestly unreasonable."[83]

The superior court awarded Holly $5,000 in attorney's fees. Although the superior court did not issue findings on the amount of attorney's fees Holly incurred, nothing suggests that her portion of the property settlement will be insufficient to cover her fees. Absent that finding, it was an abuse of discretion to award attorney's fees to Holly.

## IV. CONCLUSION

We VACATE the superior court's award of past-due child support and its award of attorney's fees and AFFIRM the superior court on all other issues. We REMAND for further proceedings consistent with this opinion.

---

[83] *Carr*, 152 P.3d at 457.